## 0071

Mark Anthony LYVERS, Respondent, v. Constancia Pido Tulop LYVERS, Appellant.

(312 S. E. (2d) 590)

Court of Appeals

*George C. Kosko,* Columbia, *for appellant.*

*William F. Cotty,* Columbia, *for respondent.*

*Deena Smith McRackan,* Columbia, *guardian ad litem.*

Feb. 10, 1984.

CURETON, Justice:

In this domestic action, the wife, Constancia Pido Tulop Lyvers, appeals from the order of the family court awarding

her partial attorney's fees and a five percent equitable interest in the jointly held home and denying her petition for custody of the minor child of the marriage and her motion for reconsideration of the order. We affirm.

The testimony before the family court was largely undisputed. The parties met in the Phillipines where Mr. Lyvers was stationed with the United States military service. The minor child was born on November 14, 1969. A week later, Mr. Lyvers was returned to the United States. The parties were married two years later.

During the two-year interval, Mrs. Lyvers gave birth to a second child fathered by a U. S. soldier. Prior to coming to this country to marry Mr. Lyvers, Mrs. Lyvers deeded the second child to the Phillipine Government. Mr. Lyvers learned of the existence of the second child some six years later after Mrs. Lyvers's sister, who had brought the child to this country, was unable to continue to care for the child. Mr. Lyvers accepted this child into his home.

Nearly two years after the marriage, Mr. Lyvers received an $8,000 settlement of a claim for personal injuries he sustained in an automobile accident prior to the marriage. He used $5,000 of the settlement to purchase a home in Maryland. According to his testimony, title was placed in both their names at the request of the lender.

Mrs. Lyvers worked intermittently during the six-year marriage. With a ninth-grade education, her earnings were minimal. She testified that her income helped pay utility bills and buy clothing for the family. Mr. Lyvers was employed during the course of the marriage; his net monthly income at the time of the hearing was $1,240.84.

The parties separated after Mr. Lyvers found a letter written by Mrs. Lyvers to another man indicating she had engaged in an affair with the man. The Maryland home was sold. Mr. Lyvers used $4,000 of the net proceeds of $7,000 to purchase a home in South Carolina. He testified that title was again placed in both names at the lender's request. In any event, Mrs. Lyvers never moved to South Carolina or lived in the house. At the time of divorce it was valued at $45,550 with a mortgage balance of $38,000.

Approximately five months after Mr. Lyvers moved to South Carolina, Mrs. Lyvers sent both children to him re-

questing that he give her time to "go on my own." Mr. Lyvers enrolled them in school, participated in an effective parenting course and involved them in church and social activities. He conceded that on several occasions his girlfriend stayed overnight at his house but denied illicit cohabitation.

The following summer, Mrs. Lyvers asked Mr. Lyvers to send the children to her for a visit. She then refused to return them. Five months after Mr. Lyvers instituted this action, Mrs. Lyvers moved the children to Ohio. A home study, made at the family court's request, indicated that Mrs. Lyvers shared a house with her sister and the sister's three children. Her half of the rent was $45. Though the study found the home adequate, Mr. Lyvers testified that when he visited there during the pendency of this hearing, the bathtub, sink and water heater were in disrepair.

Following the testimony, an *in camera* examination of the child, and the recommendation of the *guardian ad litem* that custody be given to Mr. Lyvers, the family court awarded custody of the minor child to him. Mr. Lyvers was ordered to satisfy the five percent equitable interest the court found Mrs. Lyvers to have in the home in South Carolina by paying her $500. He was also ordered to pay $300 of Mrs. Lyvers's attorney's fees of $2,835 and $500 for the services of the *guardian ad litem.*

After entry of the order and upon learning the trial judge had represented counsel for Mr. Lyvers in a domestic action four years previously, Mrs. Lyvers moved the court to reconsider its order. The motion was denied.

On appeal, Mrs. Lyvers first contends that the evidence fails to support the court's award of custody of the minor child to the husband and therefore, the court abused its discretion in giving him custody.

In this equity action tried by a judge alone, we may find facts in accordance with our view of the preponderance of the evidence. *Townes Assoc., Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976). Since the family court order recites that the decision, in part, is based "particularly upon the Court's observation of the [parties] during [their] testimony," this Court will accord substantial weight to the findings of the court. *Lee v. Lee*, 237 S. C. 532, 118 S. E. (2d) 171 (1961).

The standard against which the family court, and this Court on appeal, must weigh the evidence on the issue of custody is the welfare of the child. *Cole v. Cole,* 274 S. C. 449, 265 S. E. (2d) 669 (1980). Custody is not granted to a party as a reward or withheld as a punishment. *Davenport v. Davenport,* 265 S. C. 524, 220 S. E. (2d) 228 (1975). We find that the evidence overwhelmingly supports the family court's award of custody to Mr. Lyvers.

Without reviewing all the evidence which supports the court's award, we find particularly unsettling Mrs. Lyver's apparent inability to settle down and make a home for the children. The record reveals that in June, 1978, Mrs. Lyvers sent the children to South Carolina so she could "go on [her] own." For reasons of her own, she changed her mind in July, 1979 and kept the children with her in Maryland. For undisclosed reasons she moved the children to Ohio in December, 1979, apparently unconcerned that a teacher's strike was in progress and the schools closed.

These children are young, school-age children. In the course of a year and a half, they have had to adjust to three different schools. We are given no adequate explanation for these frequent moves. We gather from Mrs. Lyvers's conduct, however, that she certainly has little concern for the welfare of the children. The record reveals that Mrs. Lyvers's instability was also reflected in her employment, her attempt to secure a high school diploma and her approach to dealing with this action.

On the other hand, the record reveals that Mr. Lyvers has been employed with the same company for ten years, has a stable home for the minor child and has evidenced his ability to provide emotional and physical support for the child. We find Mrs. Lyvers's assertions that Mr. Lyvers smokes marijuana and cohabited with his girlfriend in the presence of the children unpersuasive and unsupported by the evidence. For the reasons given, we affirm the court's award of custody to Mr. Lyvers.

In her second assignment of error, Mrs. Lyvers argues that the court erred in equitably apportioning to her a five percent interest in a home to which she held title jointly with Mr. Lyvers. In addition to her title ownership of one-half the value of the house, Mrs. Lyvers asserts that her direct contribution

366

of her earnings and her indirect contribution of homemaker services entitle her to a greater interest in the house.

Among the factors a court must consider in determining the proper portion of marital property that is owned in equity by each spouse are: (1) the relative incomes and material contributions of the parties, *Burgess v. Burgess*, 277 S. C. 283, 286 S. E. (2d) 142 (1982); and (2) the relative fault of the parties in causing the divorce, *Simmons v. Simmons*, 275 S. C. 41, 267 S. E. (2d) 427 (1980).

In this context, the evidence reveals that Mrs. Lyvers occasionally worked outside the home at minimum wage during the marriage. Though she performed homemaker services, she conceded that Mr. Lyvers often shared in performing household and family tasks. In contrast, Mr. Lyvers used money received in settlement of his personal injury claim to purchase the house in Maryland. He testified that the house payments were made from his earnings during the course of the marriage. It is clear that Mrs. Lyvers's contributions were minimal.

In addition, the evidence reveals that Mrs. Lyvers was substantially at fault in causing the divorce. We cannot say that the award of a five percent equitable interest is against the preponderance of the evidence under these circumstances.

Mrs. Lyvers next contends that the court erred in awarding her only $300 of her total attorney's fees of $2,835. She notes that the evidence clearly establishes that her attorney spent a great deal of time preparing her case, she was financially unable to pay for an attorney and her attorney accomplished beneficial results in pre-trial hearings. We find no error.

Attorney's fees are generally discretionary with the trial judge. *Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504 (1977). In determining the amount of such fees, courts must consider: (1) the nature, extent and difficulty of the services rendered; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; and (5) the beneficial results accomplished. *Nienow*, 232 S. E. (2d) at 510.

In this case, the evidence reveals that Mrs. Lyvers was able to pay for the services of her attorney. She was employed and had minimal expenses. She was not required to contribute to the support of the child. Thus, the

court's award of partial attorney's fees was generous. In addition, reviewing the evidence against the factors established by *Nienow,* we find no error in the court's award of attorney's fees of $300.

Finally, Mrs. Lyvers argues that the court erred in denying her motion to reconsider its order after she learned the judge had represented counsel for Mr. Lyvers in a domestic action four years previously. She asserts that the judge should have disqualified himself under the dictates of Canon 3(C)(1) of the Code of Judicial Conduct.

Canon 3(C)(1) of the Code of Judicial Conduct provides:

(C) Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . .

In applying Canon 3(C)(1), the South Carolina Supreme Court has stated that the movant or petitioner must show some evidence of the bias or prejudice of the judge. *Rogers v. Wilkins,* 275 S. C. 28, 267 S. E. (2d) 86 (1980). As in *Rogers,* the record before us is totally devoid of any evidence of judicial prejudice against Mrs. Lyvers, or bias in favor of Mr. Lyvers. Thus, it was not error for the trial judge to deny Mrs. Lyvers's motion for reconsideration.

Having considered the assignments of error alleged and finding no error, the judgment entered below is

Affirmed.

SHAW and GOOLSBY, JJ., concur.