1214

Rose C. BRYAN, Appellant v. William J. BRYAN, Respondent.

(372 S. E. (2d) 116)

Court of Appeals

*J. Reese Daniel,* Columbia, *for appellant.*

*H. E. Bonnoitt, Jr.,* Georgetown, *for respondent.*

Heard April 12, 1988.

Decided Aug. 29, 1988.

BELL, Judge:

Rose C. Bryan commenced this action against her husband, William J. Bryan, seeking a divorce, alimony, equitable distribution of marital property, and other relief. The family court granted the divorce on the ground of the husband's adultery, identified and divided the marital property equally between the parties, granted the wife rehabilitative alimony, and ordered certain other relief not material to this appeal. The wife appeals the equitable distribution, the award of alimony, and the court's finding that she was partially at fault for the breakup of the marriage. She also claims the decree should be reversed because the judge was unduly partisan towards the husband. We affirm.

## I.

The main issue in the case is the family court's disposition of the marital residence. The wife makes two claims: (1) the judge erred in identifying the residence as marital property; and (2) he erred in apportioning the marital estate equally between the parties.[1] We address each in turn.

## A.

Identification of marital property is controlled by the provisions of the Equitable Apportionment of Marital Property Act.[2] The Act defines marital property as all real and personal property acquired by the parties during the marriage which is owned as of the date of the filing of marital litigation, regardless of how legal title is held. *Johnson v. Johnson*, 296 S. C. 289, 372 S. E. (2d) 107 (S. C. Ct. App. 1988).

In this case, the parties were married in September, 1979. The marital residence was acquired in March, 1981. At the time suit was commenced in July, 1983, title was in the wife's name. Thus, under the terms of the Act, the property was prima facie marital property. *Id.* This means the burden was on the wife at trial to establish its nonmarital character. *Id.*

The Act provides that property acquired during the marriage in exchange for property acquired before the marriage is nonmarital. Section 20-7-473(3). The wife claims the marital residence comes within this exception. A careful reading of the record shows her position is unfounded.

Before the marriage, the wife owned over $100,000 net in real estate, securities, and bank accounts. The husband owned an interest in a corporation which he subsequently

---

[1] Mrs. Bryan also questions the identification of 75 shares of stock, a checking account, a savings account, and some furniture as marital property. There are either no exceptions addressing these items or no argument presented in her brief regarding them. Conseqently, we do not address them. *See Walker v. Frericks*, 292 S. C. 87, 354 S. E. (2d) 915 (Ct. App. 1987) (appeals court may not consider a contention not raised by exception); *Williams v. Leventis*, 290 S. C. 386, 350 S. E. (2d) 520 (Ct. App. 1986) (exceptions are deemed abandoned when argument is merely conclusory).

[2] Section 1, Act No. 522, Acts and Joint Resolutions of the General Assembly of South Carolina, Regular Section, 1986, 64 Stat. at Large 3264, 3265 (codified as Sections 20-7-471 through 20-7-479, Code of Laws of South Carolina, 1976, as amended).

liquidated for $100,000 net. In the months leading up to the marriage, the couple began a pattern which continued after the nuptials: they would liquidate capital assets owned by one or the other (primarily by her), commingle the proceeds in joint bank accounts which also contained their marital earnings, squander a large portion of the money on extravagant living, and the put the remainder into new, more highly leveraged investments. This is precisely the pattern which led to the acquisition of the marital home.

The court found that all nonmarital property brought into the marriage by both parties lost its identity by mixing the proceeds therefrom with the marital income of the parties. Our review of the record confirms that these allegedly separate funds were commingled with marital funds and are now untraceable. Property, nonmarital at the time of its acquisition, may be transmuted into marital property (1) if it becomes so commingled with marital property as to be untraceable; (2) if it is titled jointly; or (3) if it is used in support of the marriage. *Johnson v. Johnson, supra.* The funds in question here satisfy all three criteria: they were commingled, they were held by joint title, and they were used in support of the marriage. Thus, they were marital property. Since the marital residence was acquired through use of marital funds, not by exchange for separate property, this case does not come within the exception created by Section 20-7-473(3).

Were we to accept the wife's contention that the initial $66,000 down payment on the marital residence is traceable to money she received from the sale of her nonmarital property, the result would be the same. There is no dispute that the husband's earnings were used to make the installment payments on the mortgage. Furthermore, in March, 1982, proceeds from the liquidation of his interest in a corporation plus other funds in a joint checking account were used to pay off the mortgage. At this point, if not before, the residence clearly became marital property: it was being used in support of the marriage, both parties had contributed substantially to the equity, and joint funds were used to pay the entire indebtedness on the property. The family court found that the property was titled in the wife's name because of litigation pending against the husband in

the early years of the marriage. Thus, the status of title was not evidence of intent to treat the property as nonmarital. Taken as a whole, the objective evidence unmistakeably shows the parties intended the residence to be marital property.

## B.

The family court found the equity in the marital residence was $167,464 at the time of divorce. He divided it equally between the parties. The wife contests an equal division on the ground that her contributions to the acquisition of the marital residence were much greater than the husband's.

Apportionment of the marital estate is a matter within the sound discretion of the family court, and his ruling will not be reversed on appeal unless a clear abuse of discretion is shown. *LaFitte v. LaFitte*, 280 S. C. 473, 313 S. E. (2d) 41 (Ct. App. 1984); *cf., Cloyd v. Mabry*, 295 S. C. 86, 367 S. E. (2d) 171 (Ct. App. 1988) (discretionary ruling will not be disturbed absent a clear abuse of discretion). In exercising his discretion, the judge must consider certain specific equities set forth in the Equitable Apportionment of Marital Property Act, Section 20-7-472.

In this case, the court gave detailed consideration to the statutory factors and concluded the relative economic contributions to the marriage favored the husband. The court gave particular weight to the husband's contribution of earned income in excess of $450,000, compared to the wife's contribution of less than $10,000 in earnings. He also found that the parties' investment income should be equally attributed to them because it resulted from mutual participation and the use of joint funds. Considering all factors, the court concluded an equal apportionment was justified. We have reviewed the record and find no error in the judge's analysis or the result.

The wife argues that the husband made no contribution to the marital residence, which was acquired solely through the use of her funds. We have already concluded the property was acquired with joint funds. Even if the wife's factual premise were correct, however, her argument would fail because it is also based on an erroneous legal premise. In

effect, the wife contends that apportionment should be based on a single factor—her direct contribution of the down payment at the time the marital residence was acquired. The law, on the other hand, requires apportionment to be based on the multiple factors specified in Section 20-7-472. The judge followed the statute, not the wife's theory. He was correct in doing so.

## II.

The wife also appeals the term and amount of her alimony. At trial she testified she needed between $2500 and $3000 a month for two years to get her back on her feet. She was pursuing a degree in hotel and restaurant management which she would complete in May, 1987. She also held a real estate license and had experience in real estate sales.

The court, after detailed consideration of the factors in *Eagerton v. Eagerton,* 285 S. C. 279, 328 S. E. (2d) 912 (Ct. App. 1985), awarded her $1700 a month through August, 1987. The court explicitly noted this would allow the wife a reasonable time to become employed. He found her own request for one year to find a job was "an unreasonably long period if she makes a conscientious effort to procure employment." He also noted that accommodations and real estate were growth industries in the local area and concluded the wife would be able to earn a comfortable income once she left school.

The wife complains that the judge did not make a finding that she would be self supporting at the end of the rehabilitation period. As we read the order, the court did make that finding and it is implicitly supported by the wife's own testimony and other evidence.

The court's award of $1700 a month in alimony is also well supported. The wife testified that $2500 a month would meet her needs. The court found her claimed expenses were inflated by $1276.64 attributable to her adult son by a former marriage. The wife admits $423.97 were expenses of the son. The court also took into account the wife's earning capacity and the fact that she was receiving one half of the marital assets in the equitable distribution. These were both proper considerations. Reviewing the evidence as a whole, we cannot say the judge abused his discre-

tion in setting the amount of alimony.

### III.

The wife complains the court erred in finding she had any fault in the dissolution of the marriage. We have read the judge's order very carefully and fail to see that fault affected the equitable distribution or award of alimony. The judge appears to have treated it as a neutral factor. The wife has not demonstrated any prejudice from the judge's finding that the husband's adultery and "factors in addition thereto" caused the dissolution of the marriage. There is, perhaps, some unnecessary moralizing about the wife in the decree, but we find any error in this regard to be harmless. *See Snipes v. Augusta-Aiken Railway & Electric Corp.*, 151 S. C. 391, 149 S. E. 111 (1929) (judgment will not be reversed for harmless error).

### IV.

The final issue is the wife's charge that the judge took a partisan role in favor of the husband.

Partiality is often in the eyes of the beholder. The final decision in this case was fair and legally correct. It discloses none of the bias which the wife claims infected the trial.

We also observe that the issue of bias was not raised in the family court. The wife made no motion for the judge to recuse himself prior to the submission of the case for his decision. Therefore, she has waived the right to raise the issue on appeal. *See Butler v. Sea Pines Plantation Company*, 282 S. C. 113, 317 S. E. (2d) 464 (Ct. App. 1984).

Affirmed.

SANDERS, C. J., and SHAW, J., concur.