**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Adele J. Pope, Appellant,

v.

Estate of James Brown and the James Brown 2000 Irrevocable Trust, Respondents.

Appellate Case No. 2019-000362

_____

Appeal From Aiken County
Doyet A. Early, III, Circuit Court Judge

_____

Unpublished Opinion No. 2022-UP-229
Heard March 8, 2022 – Filed May 25, 2022

_____

**AFFIRMED**

_____

Adam Tremaine Silvernail, of Law Office of Adam T. Silvernail, of Columbia, for Appellant.

J. David Black, of Columbia, and Kirsten Elena Small, of Greenville, both of Nexsen Pruet, LLC, for Respondents.

_____

**PER CURIAM:** This is the latest case in the string of litigation following the death of the famous singer and entertainer, James Brown. Here, Adele Pope—a former Personal Representative (PR) and Trustee of Brown's Estate—appeals a circuit court order holding she is not entitled to a fee or commission from that service.

Pope is a well-regarded and accomplished lawyer. This is acknowledged by all at various points in the record. It is also clear from the record that Pope worked hard throughout her service in an effort to protect Brown's estate plan, particularly its charitable beneficiaries. There is no doubting she took actions that benefitted the estate.

Yet, as we already noted, the circuit court denied Pope a fee and commission. Put bluntly, the court reasoned that the benefits from her administration did not outweigh the harm caused by what it saw as failing to properly handle the onslaught of complex matters associated with Brown's celebrity, the entertainment industry, and the various contests to his estate plan.

As we will explain, we might well view various parts of the case differently than the circuit court viewed them. Still, and on the whole, we believe the record supports the circuit court's decision. Thus, we affirm.

**FACTS**

James Brown died on Christmas Day in 2006. Not long after that, some of Brown's relatives became suspicious of the then PR/trustees of Brown's estate: David Cannon, Albert Dallas, and Alfred Bradley. Emergency petitions were filed to remove the PR/trustees, but the court did not remove them. Instead, it appointed Pope and Robert Buchanan as special administrators to oversee the trustees' work.

While serving as special administrators, Pope and Buchanan uncovered serious financial misconduct by Cannon, Dallas, and Bradley. This led to Pope and Buchanan being appointed as replacement PR/trustees in November 2007.

This case has a lengthy history. From this point forward, we will endeavor to describe only the background information that is relevant for the various arguments about Pope's request to be compensated for her service as a replacement PR/trustee.

In their roles as special administrators—in other words, before they were PR/trustees—Pope and Buchanan suggested a formula to the court for valuing Brown's estate because they believed doing so was an urgent priority for tax purposes. Dallas proposed hiring a New York lawyer to do this, but the circuit court stated it "would not hire a New York lawyer [because w]e got enough lawyers now" and stated it would go along with Pope and Buchanan's suggested formula if the parties got together and submitted a proposal.

One of the first things Pope and Buchanan did after being appointed PR/trustees was sell some of Brown's tangible personal property through Christie's Auction House.

The circuit court approved the sale because it agreed with Pope and Buchanan that a sale was necessary to generate funds for the estate. The estate had little to no cash on hand at that time.

In January 2008—not long after Pope and Buchanan were appointed PR/trustees—the circuit court ordered Pope and Buchanan be paid roughly $320,000 for their service as special administrators from March of 2007 to November of 2007. That award is not at issue here. In the same order, the court decreed Pope and Buchanan would "continue to receive fees and costs on an hourly basis, as a deposit only, to any full commissions to which they may be entitled to as Personal Representatives and Trustees." The court found "that such payments are reasonable and should be made without prejudice to (but as a deposit toward) their full commissions."

Pope and Buchanan served as PR/trustees from November 2007 until May 2009. They were removed when the circuit court approved a settlement brokered by the Attorney General that removed them. Pope and Buchanan opposed the settlement because they believed its terms were contrary to Brown's desire that the majority of his estate go to charity. Though our supreme court agreed and set the settlement aside, it affirmed Pope and Buchanan's removal, finding the circuit court had cause to remove them. *Wilson v. Dallas*, 403 S.C. 411, 448, 743 S.E.2d 746, 766 (2013).

This case is only part of the subsequent litigation that ensued. A couple months after their removal, Pope and Buchanan submitted a claim for roughly $5 million to recover the balance of their unpaid special administrator fees and receive compensation for their services as PR/trustees. The Estate (we capitalize Estate when referring to it as a litigant) sued Pope and Buchanan, claiming negligent administration. Buchanan settled. The settlement ended his claims against the Estate and the Estate's claims against him.

Pope and Buchanan were replaced as PR/trustees by Russell Bauknight. Bauknight disallowed the claim for fees and commissions. Pope filed a complaint against the Estate alleging numerous things in addition to her entitlement to the fees. The circuit court dismissed all of Pope's claims except her claim for fees and commissions.

Pope's claim proceeded to a bench trial. Three important things happened at trial that are relevant to the arguments on appeal.

First, Pope asked the court to admit numerous deposition excerpts into evidence at the start of her case in reply. The Estate objected. The circuit court let Pope offer the depositions but declined to accept them as evidence before having a chance to review them, saying it could not rule "en masse." The court directed Pope to offer

specific depositions as necessary during the presentation of her case and instructed the Estate to object when those requests were made.

Second, the Estate introduced a settlement offer made by Pope seeking $19 million to settle this case and the Estate's suit against her. Pope objected, arguing offers of settlement are inadmissible. The Estate argued the proposal was not offered to prove liability or the worth of anyone's claims but to negate Pope's testimony that the estate should have been closed long ago. The Estate claimed it was not possible to conclude its administration of Brown's assets and liabilities when there was "an outstanding claim like a $19 million claim." The circuit court allowed the Estate to admit the settlement offer into evidence.

Third, the circuit court asked for billing documents from the time after Pope and Buchanan were removed and Bauknight was appointed. It appears the court contemplated comparing those billing records to Pope and Buchanan's records in deciding whether Pope failed to appropriately balance the benefits of litigating claims against the estate when she was PR/trustee with the financial cost continued litigation forced on the estate. The court planned to review the documents ex parte because they were under seal (as were other documents in this case); however, just after the Estate submitted the documents, the court stated, "I received [the documents], I gave it a cursory examination . . . , basically just reading the cover letter and I've decided I don't need that, should not have asked for it, not going to consider it. I have shredded it and that's my ruling."

Pope moved for a directed verdict but did not prevail. At one point during her motion for directed verdict, Pope attempted to refute the alleged unreasonableness of her offer of settlement by describing how the $19 million would have been allocated.

**Summary of the Circuit Court's Decision**

The circuit court issued a lengthy written ruling. The court held (as it had noted at the beginning) that Pope was entitled to the unpaid amount of her special administrator fee, but the court held Pope was not entitled to any compensation for her service as PR/trustee. The order set out many reasons for not awarding a fee. Pope's arguments on appeal center on some of those reasons. Below, we have briefly set out the circuit court's reasoning on those issues.

The circuit court found "Pope has caused undue delay [in the effort to close the Estate] through unreasonable settlement demands and that her actions required [the Estate] to resolve this case through a trial." This involves Pope's $19 million settlement offer.

The circuit court faulted Pope for the Christie's sale, explaining the court based its prior approval of the sale on Pope's recommendation, but "unbeknownst to the Court at the time, Mrs. Pope did not consult a qualified professional in making this decision." It credited an expert's testimony that selling a celebrity's personal property "would be the last thing [he] would recommend doing" because the Estate cannot use the property for revenue-producing opportunities like museum exhibitions or tours once it's gone. It further found Pope "only received a bid proposal from a single auction house," which "left [her] with no ability to canvass the landscape for the best deal for the Estate and Trust." Based on these findings about the sale, the court held Pope breached her duty of prudence.

The circuit court also faulted Pope for insisting Brown's estate was worth $100 million. The circuit court found no evidence supporting that amount and believed that Pope had used a letter of intent, which the court distinguished from a bona fide offer, as the sole basis for her valuation even though the author of the letter of intent later refuted that value. The circuit court acknowledged Pope denied relying only on the letter of intent and supported her valuation with the formula she and Buchanan proposed when they were special administrators; however, it found "it [was] not credible for Mrs. Pope to claim that the . . . formula, that was not approved by the Court, and was tucked into a Special Administrator filing, served as the basis for her valuation when she later served as the PR." The circuit court noted expert testimony stating the formula had no basis in accepted valuation methodology. It also found Pope's failure to present a qualified expert to support her valuation supported its conclusion that her position on valuation was not credible.

The circuit court's decision also featured the settlement invalidated in *Wilson v. Dallas*. The court explained that something known in copyright law as "termination rights" made the settlement beneficial and that our supreme court did not have testimony describing those positive aspects of the settlement in *Wilson*. The court found Pope breached her duty of care and prudence by not retaining anyone to advise her on termination rights and that Pope lacked credibility. The court acknowledged our supreme court's rejection of the settlement was the law of the case, but the court said it was "not required to turn a blind eye to the fact that Mrs. Pope did not seek advice regarding the benefits of the settlement agreement vis-à-vis termination rights before her appeal attacking the settlement." The circuit court additionally concluded "Pope's opposition to the settlement was linked at least in part, to its removal of her as a PR/Trustee," which "demonstrated a breach of the duty of impartiality" as well as a "breach[] of her duty of loyalty by placing her interests in front of the best interests of the Estate and Trust."

The circuit court rejected Pope's argument that the court had already approved paying her an hourly fee for her work as PR/trustee back in January 2008, shortly after her appointment. The court held that its prior order did "not limit its authority to determine reasonable compensation or determine that no compensation is reasonable" because the order "recognize[d] that Mrs. Pope would "receive fees and costs on an hourly basis, as a deposit only to any full commission to which [she] may be entitled" and "[t]he evidence demonstrate[d] that Mrs. Pope never made any deposit of fees during her administration." It concluded, "[e]ven if Mrs. Pope had made deposits during her administration, the Court is authorized to cause a personal representative to reimburse an estate from previously paid fees."

The court also found Pope needlessly attacked opposing parties and the court throughout litigation.

The circuit court's sixty-page order is detailed and sets out a parade of other reasons supporting its decision to deny the claim. Many are not appealed. The following reasons stand out. First, the circuit court found Pope failed to analyze a debt instrument known as the Pullman Bond. Brown's copyright revenues were pledged to the bond. The court found Pope cost the Estate opportunities to generate funds and could have saved the Estate roughly $640,000 had she given the Pullman Bond the proper attention. Second, the court found Pope failed to protect Brown's property because Brown's home was in bad condition, putting the business and personal property within the home at risk. Third, the court found Pope failed to engage entertainment experts and mismanaged the entertainment side of administering the estate, which caused severe detriment to the estate.

## STANDARD OF REVIEW

Some of the issues involve evidentiary questions, which we review for abuse of discretion. *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct. App. 2000). "To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice." *Johnson v. Sam Eng. Grading, Inc.*, 412 S.C. 433, 448, 772 S.E.2d 544, 552 (Ct. App. 2015) (quoting *Conway v. Charleston Lincoln Mercury Inc.*, 363 S.C. 301, 307, 609 S.E.2d 838, 842 (Ct. App. 2005)); *see also*, Rule 103(a), SCRE ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . .").

More generally, a case challenging compensation for one's services in administering an estate is an action in equity. *See Matter of Est. of Kay*, 423 S.C. 476, 480, 816 S.E.2d 542, 544 (2018). "[A]n appellate court reviews cases in equity by finding

facts in accordance with its own view of the preponderance of the evidence." *Id.* "However, an appellate court still affords a degree of deference to the trial court because it was in the best position to judge the witnesses' credibility." *Id.* at 480, 816 S.E.2d at 544-45.

## DEPOSITION TESTIMONY

Pope argues the circuit court should have considered the deposition testimony of numerous witnesses she offered on reply.

As we already described, the circuit court declined to accept the deposition designations as evidence before having a chance to review them, observing that it could not review and rule on hundreds of pages "en masse" without substantially delaying the proceedings. The court directed Pope to refer to particular excerpts as they became relevant during her reply and the Estate to object when individual designations came up so it could make a ruling. Pope did not revisit this issue at any point during her reply. For this reason, we believe we must find the issue unpreserved or waived. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 302, 641 S.E.2d 903, 907 (2007) (stating issues must be raised to and ruled upon by the circuit court to preserve them for appellate review).

The result would not change even if we re-framed our review to focus on the circuit court's initial decision not to accept the introduction of the numerous designations in a single stroke. It was not an abuse of discretion for the court to conclude it could not review hundreds of pages of depositions and make admissibility determinations at that moment, in the middle of trial. *See Ex parte Capital U-Drive-It, Inc.*, 369 S.C. 1, 5, 630 S.E.2d 464, 467 (2006) ("An abuse of discretion occurs when the judge's ruling is based upon an error of law, . . . is without evidentiary support[,]. . . reveals no discretion was exercised[,] or . . . does not fall within the range of permissible decisions applicable in a particular case."). We also add that we reviewed the depositions. Considering them would not change the outcome for reasons we will describe in the final section of this decision.

## POPE'S OFFER OF SETTLEMENT

Pope argues the circuit court improperly relied on her settlement offer to support its findings she delayed the Estate's administration and forced this case to trial.

The Estate argues Pope waived this issue because she discussed the settlement offer while arguing her directed verdict motion. It further argues that regardless of waiver, the court's ruling did not offend Rule 408, SCRE, because evidence of the proposed settlement was not offered to prove liability or the worth of Pope's claim.

"Evidence of [compromises and offers to compromise are] not admissible to prove liability for or invalidity of the claim or its amount." Rule 408, SCRE. "This rule . . . does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id.*

We respectfully reject the argument that Pope waived her objection by addressing the settlement offer in her motion for directed verdict. Pope noted the offer came in over her objection and understandably sought to explain her belief that the offer was not unreasonable by describing how the money would have been allocated had the offer been accepted. Pope was not the party who first placed the offer before the court. *C.f. Frazier v. Badger*, 361 S.C. 94, 104, 603 S.E.2d 587, 592 (2004) ("A litigant cannot complain of prejudice by reason of an issue he has placed before the court.").

We decline to express an opinion on whether the circuit court erred in using the amount of Pope's offer as a basis for finding Pope delayed the Estate's administration and as a justification for denying her a fee. Even if this was error, we are convinced it did not prejudice Pope. As we noted at the beginning, the circuit court gave a lengthy list of justifications for its decision to deny her a fee. Thus, even if Pope is right about the settlement, this issue does not warrant reversal. *See Johnson*, 412 S.C. at 448, 772 S.E.2d at 552 (stating prejudice is required to obtain reversal based on the admission of evidence).

## EX PARTE FILINGS

Pope argues the circuit court's ex parte receipt of the Estate's billing records and the court's subsequent destruction of those records was improper and violated her due process right to review and refute the evidence against her.

"A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . ." Rule 3(B)(7), CJC, Rule 501, SCACR. "[A]lthough ex parte contacts are strongly disfavored, prejudice must be shown to obtain a reversal on this ground." *Bakala v. Bakala*, 352 S.C. 612, 623, 576 S.E.2d 156, 162 (2003). Furthermore, "[s]ubstantial prejudice is required to establish a violation of due process." *Felder v. Charleston Cnty. Sch. Dist.*, 327 S.C. 21, 26, 489 S.E.2d 191, 193 (1997).

It would have been improper for the court to consider the billing records without giving Pope the opportunity to view them and respond under Rule 3(B)(7), CJC,

Rule 501, SCACR; however, the record reflects the circuit court did not consider them. The court stated "I received [the documents], I gave it a cursory examination . . . , basically just reading the cover letter and I've decided I don't need that, should not have asked for it, not going to consider it. I have shredded it and that's my ruling . . . ." We do not see how we could find prejudice when the court did not review the billing records and when they did not factor into the court's decision.

## BIAS

Pope argues the circuit court's findings against her (in previous orders and in *Wilson*), its findings that she personally attacked the court and was not credible, and the harsh tone it used in addressing her service as PR/trustee lead to the conclusion the court was biased against her. She additionally argues the circuit court interfered with her ability to pursue her fee claim by making documents confidential and scheduling this case for a bench trial rather than a jury trial. Pope contends this disadvantaged her and deprived her of due process.

"Generally, where bias . . . is claimed, the issue must be raised when the facts first become known and, in any event, before the matter is submitted for decision." *Butler v. Sea Pines Plantation Co.*, 282 S.C. 113, 122-23, 317 S.E.2d 464, 470 (Ct. App. 1984). A party can raise bias in circuit court through a motion to recuse. *See Bryan v. Bryan*, 296 S.C. 305, 311, 372 S.E.2d 116, 120 (Ct. App. 1988).

Pope claims the circuit court's bias against her began just after the *Wilson* decision, which our supreme court published in 2013. The trial for Pope's fee claim did not begin until 2017. The circuit court did not file its order until 2019. Still, Pope never requested recusal and did not raise bias until her appellate brief. This issue is accordingly not preserved for our review. *See Bryan*, 296 S.C. at 311, 372 S.E.2d at 120 (finding a party who made no motion to recuse in family court waived the right to raise bias on appeal).

## DISQUALIFICATION OF CURRENT PR/TRUSTEE

Pope argues the circuit court erred in allowing Bauknight to defend the Estate in this case because he is loyal to parties whose interests do not align with the Estate's interests.

Pope's argument consists of three sentences with no citation to authority. We find this issue plainly abandoned. *See Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Inj. Fund*, 389 S.C. 422, 432, 699 S.E.2d 687, 692 (2010) (stating an appellate court

will not consider an argument with no citation to authority that is so conclusory it is an abandonment of the issue on appeal).

**FINDINGS IN CONFLICT WITH PREVIOUS RULINGS**

This issue seems to be the "meat" of the appeal. Pope argues that although the circuit court now takes the position she breached her fiduciary duties by mishandling the Christie's sale, resisting the 2009 settlement, and improperly valuing Brown's assets, the court previously approved the Christie's sale, the court previously accepted her valuation, and our supreme court vindicated her position by invalidating the 2009 settlement. She also argues that the 2008 payment order we have already described was a contract entitling her to a commission and that the circuit court erred in finding the order did not limit its authority to deny her compensation. As we understand it, Pope's basic argument is that she and Buchanan were being attacked by several parties and on multiple fronts for the vast majority of their tenure as PR/trustees. Because of that, Pope says she and Buchanan deliberately sought the court's pre-approval for nearly everything they did, and that the order denying her fees impermissibly goes back on things the court previously approved.

We begin with the argument the circuit court's 2008 payment order, issued shortly after Pope and Buchanan were appointed as PR/trustees, bound the circuit court and entitles Pope to a full commission. We respectfully disagree. *See Kay*, 423 S.C. at 484-87, 816 S.E.2d at 547-48 (ordering a personal representative to reimburse the estate for commissions previously received because they were excessive); *see also Matter of Est. of Stone*, 768 P.2d 334 (Mont. 1989) (requiring reimbursement when administration was harmful to the estate). Indeed, the payment order states Pope could continue receiving fees and costs "as a deposit only," and "without prejudice" to her claim for a full commission. The order is not a carte blanche approval of Pope's administration before that administration had even occurred, and it did not bind the estate to pay the full freight for all work done on the estate's behalf, even work that turned out to have been harmful.

We turn next to Pope's argument that the circuit court previously accepted her valuation for the estate, that the court specifically authorized Pope and Buchanan to hold the Christie's auction, and that the court wrongfully faulted her for resisting the 2009 settlement.

While the order notes these things, we see the heart of the circuit court's reasoning as being driven by the evidence that Pope focused on litigating the claims against Brown's estate during her administration and that the "administration" side of Brown's estate suffered. A slew of witnesses testified about the various tasks

involved in inventorying and managing the estate of a deceased celebrity. Listing these tasks would add a good bit of length to this opinion, but would not add to the analysis. The thrust of the testimony was that it was next to impossible to competently administer this estate without retaining experts to assist. The evidence suggested that Pope endeavored to manage much of the "entertainment" administration herself, while also personally handling much of the estate litigation herself. We read the circuit court's decision as finding this harmed the entertainment side and that the harm outweighed any benefits provided on the litigation side.

We agree with Pope that it would not be appropriate to hold her administration to a standard of perfection. We also fully understand that Brown's estate faced a mountain of challenges. One witness said it was the most complicated estate he had ever reviewed. The issues included omitted heirs, people included in the will who were not heirs, a questionable claim to be Brown's surviving spouse, the fact that Brown was already in other litigation when he died, false records of asset transfers, and image/persona rights.

Nevertheless, the testimony in the trial record about how to properly administer this sort of estate is compelling. We cannot overlook the fact that the circuit court judge who heard the witnesses found the testimony to be compelling, and we cannot overlook the court's findings that Pope prolonged this litigation and made it unnecessarily expensive. At one point, our supreme court had to admonish her to stop purporting to file documents on the estate's behalf. She sought at another point to set aside the settlement that Buchanan (her co-PR/trustee) had reached with the estate, and the court found proper attention to the Pullman Bond would have saved the estate over $500,000. Even if, for example, the circuit court erred in re-scrutinizing the 2009 settlement and holding it against Pope, other parts of the order would stand and support its rejection of her claim.

**CONCLUSION**

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

**THOMAS, MCDONALD, and HEWITT, JJ., concur.**