# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of the Estate of Marion M. Kay.

Edward D. Sullivan, as Personal Representative of the Estate of Marion M. Kay, Petitioner-Respondent,

v.

Martha Brown and Mary Moses, Respondents-Petitioners.

Appellate Case No. 2016-002337

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Laurens County
Donald B. Hocker, Probate Court Judge

---

Opinion No. 27804
Heard March 7, 2018 – Filed May 23, 2018

---

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Daryl G. Hawkins, of the Law Office of Daryl G. Hawkins, LLC, of Columbia, for Petitioner/Respondent.

John R. Ferguson, of Cox Ferguson & Wham, LLC, of Laurens, for Respondents/Petitioners.

---

**JUSTICE HEARN:** This cross-appeal primarily concerns the amount of compensation owed to Petitioner/Respondent Edward Sullivan as personal representative (PR) of Marion Kay's estate. Sullivan filed a petition to settle the estate and sought probate court approval for his commissions as PR together with fees and costs. In response, Respondents/Petitioners Martha Brown and Mary Moses (Brown and Moses), cousins of the deceased and two of multiple beneficiaries under the will, challenged his compensation as excessive, and the probate court agreed, reducing Sullivan's commissions, disallowing certain fees and costs, and awarding attorney's fees to Brown and Moses. The circuit court affirmed, and both sides appealed. In a 2-1 opinion, the court of appeals affirmed in part and reversed in part. *In re Estate of Kay*, 418 S.C. 400, 792 S.E.2d 907 (Ct. App. 2016). We affirm in part, reverse in part, and remand to the probate court.

## STANDARD OF REVIEW

A proceeding before the probate court may sound in equity or at law. *In re Estate of Holden*, 343 S.C. 267, 278, 539 S.E.2d 703, 709 (2000). Brown and Moses demanded a hearing to challenge Sullivan's compensation for his services in administering Kay's estate—an action in equity. *Lee v. Lee*, 251 S.C. 533, 534, 164 S.E.2d 308, 308 (1968) (holding an action for an accounting to determine whether the guardian received improper compensation was in equity). Ordinarily, an appellate court reviews cases in equity by finding facts in accordance with its own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, an appellate court still affords a degree of deference to the trial court because it was in the best position to judge the witnesses' credibility. *Lewis v. Lewis*, 392 S.C. 381, 391, 709 S.E.2d 650, 655 (2011).

A threshold issue in this case is the applicability of the "two-judge rule" to a decision of a probate judge which is affirmed by a circuit court judge. The majority of the court of appeals employed the two-judge rule in affirming, while the dissenting judge, then-Acting Judge Few, posited that the standard of review in an appeal from an equity case should not change simply because two judges have made the same factual determination, and would have applied a preponderance of the evidence standard of review in this case. We take this opportunity to clarify the appropriate standard of review in cases where the probate court's decision is affirmed by the circuit court.

What has become known as the two-judge rule had its genesis in *Townes*, wherein the Supreme Court undertook to explain the applicable standards of

appellate review in various types of cases. In *Townes*, a master made findings of fact and conclusions of law which were concurred in by the circuit court, and the Court stated that: "In an action in equity, tried first by a master or a special referee and concurred in by the judge, the findings of fact will not be disturbed on appeal unless found to be without evidentiary support or against the clear preponderance of the evidence." 266 S.C. at 86, 221 S.E.2d at 775–76.

Both the court of appeals and this Court have applied the two-judge rule to probate cases where the circuit court judge has agreed with the decision of the probate court. *See Geddings v. Geddings*, 319 S.C. 213, 216, 460 S.E.2d 376, 378 (1995) (applying the two-judge rule where the circuit court affirmed the probate court's decision that a wife had not waived her right to invoke her elective share); *Dean v. Kilgore*, 313 S.C. 257, 260, 437 S.E.2d 154, 155 (Ct. App. 1993) ("Although *Townes* sets forth the two-judge rule for equity cases first tried by a master or special referee and subsequently affirmed or concurred in by the circuit court, we see no reason not to apply the same rule to an affirmance or concurrence of the circuit court with the probate court."). Relying on this precedent, a majority of the court of appeals held the two-judge rule applied.

Under the framework set out in *Townes*, prior to our master in equity system, when circuit judges referred matters to special referees or masters to make findings of fact, the limited scope of appellate review over factual findings concurred in by two judges may have been appropriate. However, we hold today that the two-judge rule has no applicability to cases wherein the circuit court, sitting in a purely appellate capacity, as here, affirms the findings of a lower tribunal. Instead, the applicable standard of review is the same as in other equity matters, and the appellate courts of this state may take their own view of the preponderance of the evidence. Accordingly, we analyze this case through this broad lens.

## FACTUAL/PROCEDURAL BACKGROUND

Marion Kay died on May 3, 2007, leaving a will that named Sullivan, her close friend and estate planning attorney, as personal representative. At the time of Kay's death, she owned a house, a ten acre parcel of land, and a one-half undivided interest in 330 acres (the Farm); the remaining one-half interest belonged to Brown and Moses. Kay left the residuary of her estate as follows: (1/4) to Lisbon Presbyterian Church, (1/4) to Lisbon Presbyterian Church Cemetery fund, and the remaining (1/2) to five beneficiaries who each received (1/10), consisting of Marla Elizabeth Heard, Bart Edward Heard, Brown, Moses, and the Presbyterian Home of

South Carolina. Brown and Moses had believed Kay would leave them her interest in the Farm, but instead, they simply were named as (1/10) residuary beneficiaries.

The will also granted an option to Kay's neighbor, Charles Copeland, to purchase the real estate within eight months of her death "at the fair market price on the date of my death, the decision of my PR regarding the fair market price to be final." (Copeland Option). Additionally, the will provided "reasonable compensation for [Sullivan's] services rendered and reimbursement for reasonable expenses," granted him the authority to sell personal and real property, and authorized him:

> To exercise all the powers in the management of my Estate which any individual could exercise in the management of similar property owned in his or her own right…to execute and deliver any and all instruments, and to do all acts which my Personal Representative may deem proper or necessary to carry out the purposes of this my Will, without being limited in any way by the specific grants of power made, and without the necessity of a court order.

During Sullivan's administration of the estate, he learned the majority of beneficiaries preferred their interests in cash rather than a fractional ownership interest in land. Accordingly, Sullivan decided the best course of action was to negotiate a sale of the real estate, and if that failed, to file a partition action.

At the outset, Sullivan believed at least three "novel issues" posed potential impediments to his ability to convey marketable title and heavily discounted the property's value. First, Sullivan discovered that a 1973 agreement purportedly granted Brown and Moses a right of first refusal; however, he questioned whether the right was enforceable under the rule against perpetuities.[1] Second, if the right of first refusal was enforceable, he believed the Copeland Option created a competing interest in the land. Third, Brown alleged an earlier agreement—which could not be produced— entitled her to an undivided interest in five acres of the estate's property. According to Sullivan, these issues had the potential to prolong the administration of the estate. While Copeland indisputably did not exercise his option during the

---

[1] The 1973 right of first refusal purportedly gave Brown and Moses the right to purchase Kay's undivided interest in the Farm. At the probate court, Sullivan testified the rule against perpetuities created potential problems as to its enforceability. Counsel for Brown and Moses argued any violation of the rule would be academic if Brown and Moses consented to the sale, which they ultimately did when the property was sold in 2010.

eight months following Kay's death, Sullivan believed the eight month time period was tolled until an appraiser determined the Farm's fair market value. Sullivan hired Paul Major, who appraised the Farm's value at approximately $614,000, of which Kay's interest represented $307,000. Sullivan received this appraisal in February of 2008, nearly nine months after Kay's death.

Three months later, in May of 2008, Sullivan sent a letter to all the beneficiaries proposing a compromise whereby Brown would receive the five acres at no charge, Copeland would exercise his option as to approximately 46 acres of land, and Brown and Moses would release their right of first refusal but would retain the option to purchase Kay's remaining interest at the fair market value. If Brown and Moses elected not to purchase the remaining interest, Sullivan would sell it to the highest bidder. After the sale, the cash proceeds would be distributed according to the will's residuary clause.

When Brown and Moses failed to respond to the proposed settlement, Sullivan attempted another compromise a few months later in July of 2008 by arranging a meeting with church officials, Brown, Moses, and the appraiser. Again, Brown and Moses did not respond, later explaining they felt "ambushed" by having to take part in a meeting with other beneficiaries. Having exhausted repeated attempts to resolve the matter amicably, Sullivan hired his law firm to file a partition and declaratory judgment action. The parties ultimately settled whereby Sullivan sold the Farm, the lot, and the home to a cousin of Brown and Moses for approximately 94% of the 2007 appraised value. Sullivan then filed a petition for settlement in the probate court as required by the Probate Code.[2]

In his petition for settlement and proposal for distribution, filed approximately three years after Kay's death, Sullivan sought approval of $93,775.00 owed for services rendered as PR.[3] Sullivan notified all the beneficiaries, but only Brown and Moses sent a letter to the probate court requesting a hearing.[4]

---

[2] Under the statute in effect at the time, "a personal representative must file with the court…a petition for settlement of the Estate…." S.C. Code Ann. § 62-3-1001(a)(3) (2009).

[3] Sullivan requested approval of $93,775.00 for commissions paid as of November 2010 and an additional $13,447.05 in unpaid commissions for services rendered from the last payment date until the settlement hearing.

[4] Brown and Moses did not file any pleadings.

At the hearing which ensued before the probate court, counsel for Brown and Moses argued Sullivan had received excessive compensation because he unnecessarily complicated the estate administration. Brown and Moses maintained Sullivan should have simply filed a deed of distribution instead of hiring his law firm to seek a partition order. Sullivan testified the numerous "novel issues" in the estate's administration prompted him to file a declaratory judgment action, and he defended his actions by asserting that he attempted to carry out Kay's intent by selling the real estate, thereby generating cash proceeds to distribute to the beneficiaries. To support his position, he pointed to the fact that Kay had hired him approximately four years prior to her death to negotiate a proposal with Brown and Moses to divide and sell the Farm, but Brown and Moses never responded to his requests.

After two days of testimony, the probate court found Sullivan should have executed a deed of distribution to all the beneficiaries rather than have filed a partition action. According to the probate court, Sullivan's decision to partition the property and his concern over the Copeland Option complicated what should have been a rather simple and straightforward estate administration. Finding the commissions sought by Sullivan to be excessive, the probate court reduced the amount to $51,300.00—approximately 10% of the estate's value—directed him to reimburse the estate $42,775.00 for commissions previously received, and awarded Brown and Moses attorney's fees under the common fund doctrine, concluding that all beneficiaries benefitted from their counsel's representation.

The circuit court affirmed the probate court, and both parties appealed to the court of appeals, which affirmed on all grounds except for the award of attorney's fees to Brown and Moses. Both parties sought certiorari from this Court. Sullivan seeks to retain the $93,775.00 which he paid himself as PR, approval of an additional $13,447.05 in commissions, and fees and costs incurred at the settlement hearing. Brown and Moses seek to limit Sullivan's compensation to 5% of the estate, as provided by South Carolina Code Section 62-3-719. We now affirm in part, reverse in part, and remand for further proceedings.

## ANALYSIS

### I. Personal Representative's Commission

Sullivan contends the probate court's reliance on section 62-3-719 of the South Carolina Code—setting the default limit for PR compensation at 5% of the estate— is misplaced because he asserts that statute is inapplicable. Additionally, Sullivan asks the Court to adopt a new test to assist probate courts in the determination of

reasonable compensation.[5] In contrast, Brown and Moses assert that because the will does not define reasonable compensation, the probate court properly resorted to section 62-3-719 as a basis for determining compensation.

The Probate Code establishes a default rule for PR compensation in section 62-3-719, which provides,

> Unless otherwise approved by the court for extraordinary services, a personal representative shall receive for his care in the execution of his duties a sum from the probate estate funds not to exceed five percent of the appraised value of the personal property of the probate estate plus the sales proceeds of real property of the probate estate received on sales directed or authorized by will. . . .

S.C. Code Ann. § 62-3-719(a) (2009 & Supp. 2017). However, subsection (c), an exception to the 5% default rule, states, "The provisions of this section do not apply in a case where there is a contract providing for the compensation to be paid for such services, or *where the will otherwise directs*...." (emphasis added). Sullivan contends the will's authorization of "reasonable compensation" falls within this exception. While the probate court did not specifically find that section 62-3-719(a) applied, it clearly considered the statute in arriving at its approval of $51,300 in commissions, which represented approximately 10% of the estate.

We believe the language in the will is not sufficient to bring Sullivan's commissions within the exception expressed in subsection (c). The will merely contemplates "reasonable compensation," and absent any directive in the will, that determination was left to the probate court. Even though the probate court did not expressly find that Sullivan's actions constituted "extraordinary services," pursuant to the statute, we believe its decision to award Sullivan compensation of 10% of the estate's value is tantamount to such a finding.

Moreover, our own view of the preponderance of the evidence supports the award of $51,300. While Sullivan testified he spent approximately 450 hours on the estate, he could not definitively answer the probate court's question as to how he charged for his services—whether it was a set percentage of the estate or based on

---

[5] Sullivan's eighteen-part test, which we decline to adopt, includes factors such as the time and labor required; time limitations imposed by clients; results obtained; the PR's professional education, experience, or accolades; and whether the PR is a member of the South Carolina Bar, is drawn from a Florida statute. *See* Fla. Stat. § 733.617 (1973).

his time. Sullivan discussed a number of factors he had considered in arriving at his fee, and appeared to put significant weight on the "exceptional result" he ultimately garnered for the estate through the property's sale. While we disagree with the probate court that Sullivan simply "pull[ed] a figure out of the air" in determining compensation, the total commissions sought constituted 21% of the estate's value, a figure the probate court deemed "clearly excessive." We believe the probate court was correct in this assessment, and we affirm the reduction in Sullivan's compensation to $51,300.[6]

## II.      Expenses Incurred at the Settlement Hearing

Sullivan contends the court of appeals erred in affirming the probate court's decision not to award reasonable fees and expenses incurred at the settlement hearing. Brown and Moses assert the court of appeals properly affirmed the decision by differentiating costs incurred defending the estate as PR from costs incurred by Sullivan seeking more compensation in his individual capacity.

Under the Probate Code, when a "personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred." S.C. Code Ann. § 62-3-720 (2009 & Supp. 2017). Each court below concluded that section 62-3-720 does not apply to instances where the personal representative primarily acts for the benefit of himself in procuring compensation for his services. However, under the plain language of the statute, it applies when (1) the PR defends or prosecutes, (2) *any proceeding* in *good faith*, whether successful or not. Here, citing a different statute—section 62-3-715(20)[7]—the court of appeals stressed section 62-3-720 was intended to apply only

---

[6] Additionally, Sullivan contends the probate court's disagreement with his decision to seek a partition improperly influenced its determination to reduce compensation. Because our own view of the preponderance of the evidence supports the $51,300 award, it is unnecessary to address this argument. *16 Jade St., LLC v. R. Design Const. Co., LLC.*, 405 S.C. 384, 390, 747 S.E.2d 770, 773 (2013) (declining to address an issue after reaching a dispositive issue).

[7] Section 62-3-715, titled "Transactions authorized for personal representatives; exceptions," concerns a personal representative's authority, not necessarily compensation. This provision states, "Except as restricted or otherwise provided by the will…a personal representative, acting reasonably for the benefit of the interested persons, may properly:

to proceedings when the personal representative acted reasonably for the benefit of the estate as opposed to requesting approval of the PR's compensation. We find this distinction erroneous as applied to Sullivan.

Once requested by Brown and Moses, it was incumbent on Sullivan to attend the settlement hearing, and he necessarily incurred attorney's fees and costs to prepare and travel to Laurens County. At that hearing, Sullivan was called upon to defend his decision to seek a partition rather than issue a deed of distribution. Additionally, he defended against Brown's claim that she was entitled to an additional five acres of property by virtue of an unproduced agreement entered into years before Kay's death. While this claim may not have been the primary reason for the hearing, Sullivan was required to defend it. Therefore, we find the hearing constituted a "proceeding" which Sullivan was required to defend within the meaning of section 62-3-720.

Section 62-3-720 also requires the proceeding be advanced in good faith. Significantly, the probate court, as affirmed by the circuit court and the court of appeals, concluded that Sullivan acted in good faith. Taking our own view of the preponderance of the evidence, we agree all actions by Sullivan as PR were taken in good faith. Sullivan had the authority under the will to sell the real estate, and while the probate court determined Sullivan prolonged the estate by seeking a partition order, we question whether a deed of distribution was even a viable alternative under these facts. We believe Sullivan acted well within his authority under the will when he sought partition of the property. Moreover, prior to filing the action, Sullivan repeatedly attempted to reach an amicable solution among the beneficiaries. However, without advancing a solution of their own, Brown and Moses failed to respond to Sullivan, instead voicing their displeasure only when the end of the estate administration was in sight. Before the probate court, Sullivan testified Bart Heard, the Lisbon Presbyterian Church, and the Presbyterian Home all preferred the real estate be sold in order to receive cash proceeds. Moreover, Major, a forestry consultant and real estate broker, testified Sullivan reached an extraordinary result by selling the real estate in 2010 for 94% of the 2007 appraisal—at a time when real estate prices remained stagnant after severe declines during the recession.

---

(20) prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties;

S.C. Code Ann. § 62-3-715(20) (2009 & Supp. 2017).

Bart Heard testified not only did he approve of Sullivan's charges and expenses, but he felt it would be unfair if Brown and Moses did not pay for the proceeding before the probate court because they were the individuals who had prolonged the administration of the estate. Penelope Arnold, the Director of Charitable Foundation and Church Relations for the Presbyterian Home, also testified the church did not object to Sullivan's purported compensation. Additionally, Sullivan's law firm reduced its hourly rate by about 35%, and the firm further discounted its invoices, the total of which represented approximately $20,000.

Accordingly, because we find ample evidence demonstrating Sullivan defended the claim in good faith, we reverse the court of appeals' decision refusing to award him necessary expenses. We remand to the probate court to calculate these expenses, including attorney's fees.

## III.  Remaining Issues

On cross-appeal, Brown and Moses assert the court of appeals erred in holding they abandoned their argument that Sullivan should be responsible for all fees and costs incurred at the settlement hearing because he acted in his individual interest to recover additional compensation rather than in the Estate's interest in defending a claim. While we disagree that the issue was abandoned, because we hold Sullivan defended the claim in good faith, we find their argument unavailing.

Additionally, Brown and Moses assert the court of appeals erred in reversing the award of their attorney's fees under the common fund doctrine. We disagree.

Under the common fund doctrine, a court in its equitable jurisdiction may award reasonable attorney's fees to the party "who, at [the party's] own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property." *Layman v. State*, 376 S.C. 434, 452, 658 S.E.2d 320, 329 (2008). As a method of fee-spreading, the doctrine's rationale is that "'one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses.'" *Id.* at 452, 658 S.E.2d at 329 (quoting *Johnson v. Williams,* 196 S.C. 528, 531, 14 S.E.2d 21, 23 (1941)). To recover under the doctrine, there must be an express or implied contract of employment between the successful party's counsel and all individuals who hold an interest in the fund. *Johnson*, 196 S.C. at 532–33, 14 S.E.2d at 23. Moreover, if the parties' interests are adverse, the doctrine does not apply. *Bedford v. Citizens & S. Nat'l Bank of S.C.*, 203 S.C. 507, 515, 28 S.E.2d 405, 407 (1943).

Significantly, recovery under the common fund doctrine is subject to abuse and should be exercised cautiously. *Johnson*, 196 S.C. at 532, 14 S.E.2d at 23.

While all the beneficiaries arguably benefited from Brown and Moses' efforts to challenge Sullivan's compensation, we find the beneficiaries of the estate were not united in pursuit of this cause. A majority of the beneficiaries supported Sullivan's efforts to sell the Farm and distribute the cash proceeds according to Kay's will. Furthermore, there was no express contract of employment between counsel for Brown and Moses and the other beneficiaries. Moreover, because the beneficiaries did not acquiesce in Brown's and Moses' representation but instead commended Sullivan's performance and opined that Brown and Moses should bear the costs incurred before the probate court, we find no implied contract existed. Therefore, we conclude the common fund doctrine does not apply; accordingly, we affirm the court of appeals' decision that Brown and Moses are responsible for their own attorney's fees.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the court of appeals' decision to uphold the award of $51,300 in commissions for Sullivan's services as personal representative and the determination that Brown and Moses are responsible for their own attorney's fees. We **REVERSE** the court of appeals' conclusion that Sullivan is not entitled to recover necessary expenses, including reasonable attorney's fees, incurred at the settlement hearing under section 62-3-720 and **REMAND** to the probate court for that determination.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

**BEATTY, C.J., KITTREDGE and JAMES, JJ., and Acting Justice Amy W. McCulloch, concur.**