**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Julie Irving, Respondent,

v.

Jeanne Poafpybitty, Donald Matthew Rothgeb, and Steven Taylor Rothgeb, Defendants,

Of whom Jeanne Poafpybitty, Personal Representative of the Estate of Donald M. Rothgeb, is the Appellant.

Appellate Case No. 2020-001291

———————

Appeal From Horry County
Benjamin H. Culbertson, Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-057
Heard February 13, 2024 – Filed February 19, 2025

———————

**REVERSED AND REMANDED**

———————

Bret Harlan Davis and Reese R. Boyd, III, both of Davis & Boyd, LLC, of Myrtle Beach; and Thomas J. Rode, of Charleston, all for Appellant.

Clifford Heywood Tall, of Clifford H. Tall, PA, of Myrtle Beach, for Respondent.

———————

**PER CURIAM:**  Jeanne Poafpybitty (Poafpybitty), as personal representative of the Estate of Donald M. Rothgeb (the Estate), appeals the circuit court's order affirming the probate court's order ruling in favor of Julie Irving.  Poafpybitty argues the circuit court erred in affirming the probate court's (1) finding she breached her duties to the Estate without first finding her conduct was inconsistent with the testator's intent that she have "sole discretion" to distribute the property, thus failing to follow the testator's intent as stated in the will; (2) failure to apply *In re Estate of Kay*, 423 S.C. 476, 816 S.E.2d 542 (2018); (3) application of the South Carolina Trust Code to the actions of a personal representative in administering an estate; (4) award of attorney's fees to Irving to be paid from the Estate's funds under the "common fund" doctrine; (5) decision to remove Poafpybitty as personal representative and appointing a special administrator when no interested person petitioned for her removal, no evidence supported her removal, and no request for appointment of a special administrator was made during trial; and (6) determination that Poafpybitty was responsible for the attorney's fees incurred in defending this action without a finding of bad faith as required by section 62-3-720 of the South Carolina Code (2022).  We reverse and remand.

**FACTS**

Donald M. Rothgeb (Testator) died testate on January 26, 2014.  His will appointed Poafpybitty, his wife of twenty-five years, as personal representative of the Estate.  The will devised the residue of the Estate to Poafpybitty and Testator's three adult children from a prior marriage: Irving, Donald Matthew Rothgeb (Matthew), and Steven Taylor Rothgeb (Steven) (collectively, the co-beneficiaries) "in approximately equal shares."[1]  The will gave Poafpybitty "sole discretion to designate the real or personal property comprising the respective shares so established, so long as the value thereof is approximately equal."  It also stated,

> I direct that all my legally enforceable debts, secured and unsecured, be paid as soon as practicable after my death. . . .  If at the time of my death any of the real property herein devised is subject to a mortgage, I direct that the devisee taking such mortgaged property shall take it subject to such mortgage and that he shall not be entitled to have the obligation secured thereby paid out of my general estate.

---

[1] Poafpybitty did not pursue her entitlement to an elective share of the Estate.

At the time of Testator's death, the Estate was comprised of twelve parcels of real property, most of which were rental properties. Two of these properties were encumbered by mortgage debt. The Estate did not include liquid cash assets.

About one year after Testator's death, Steven sent a letter to Poafpybitty inquiring about the Estate's financial records and activities. Frustrated with Poafpybitty's incomplete response, the co-beneficiaries hired counsel, Jack Scoville.

In October 2015, Scoville sent a letter indicating which properties the co-beneficiaries wished to receive. He acknowledged Poafpybitty wished to keep Testator's residence (the Residence)—where she had resided with Testator during their marriage and continued to reside—as part of her distribution. Scoville also suggested the properties be appraised for distribution purposes. After the appraisals were completed, the Estate prepared an agreement, which indicated the parties agreed to the distribution of the properties to the co-beneficiaries, as set forth in Scoville's letter, and of the Residence and two other Estate properties to Poafpybitty. However, the parties did not sign this agreement. The co-beneficiaries then relieved Scoville.

On December 9, 2015, counsel for the Estate sent a proposed distribution to Irving. This distribution to Poafpybitty included the Residence, which was appraised at $95,000 and carried a balance of $129,000 on the mortgage loan, and two other properties, which were appraised at $65,000, and $45,000, respectively. In January 2016, Poafpybitty revised the distribution proposal to reflect a distribution credit of $118,000 for the Residence, which included a credit for the costs to repair the Residence. Irving objected to the proposed distribution and asked that all remaining assets of the Estate be distributed promptly in four equal shares, with the beneficiaries to settle full ownership of the properties among themselves after closure of the Estate.

On April 25, 2016, Irving filed a summons and "complaint to secure fair and prompt closure of estate administration" against Poafpybitty, individually and as personal representative of the Estate, and the remaining co-beneficiaries. Irving sought closure of administration with an accounting and final asset distributions.

Irving alleged Poafpybitty initially listed the value of the Residence as $191,200 on an inventory but later proposed a distribution of the Residence to herself at a value of $95,000. Irving further alleged Poafpybitty used Estate funds to install a new roof on the Residence without first informing the co-beneficiaries; sold real property of the Estate without informing the co-beneficiaries and denied the sales

when they inquired; and failed to adequately respond to Irving's request for information about the Estate's activities until Irving hired an attorney.

In the prayer for relief, Irving requested (1) that Poafpybitty file an accurate and up-to-date estate accounting; (2) that the Estate's remaining assets be equally distributed unto the four beneficiaries; (3) that the probate court disallow Poafpybitty from using Estate resources to "negotiate . . . for [her] own private interests"; (4) that the beneficiaries be ordered to mediate their continuing differences; (5) that Poafpybitty make interim financial distributions to all beneficiaries to assist them with costs of this mediation; (6) attorney's fees and costs for Irving; and (7) additional relief as the court deemed just and proper.

Poafpybitty filed an answer and counterclaim. She admitted she filed an initial inventory and appraisement valuing the Residence at $191,200, but stated that after consultation with the co-beneficiaries, an appraisal of the Residence was undertaken, and the property appraised for $95,000 due to its poor condition. Poafpybitty also alleged the complaint was a frivolous proceeding and brought counterclaims against Irving for abuse of process and attorney's fees and costs.

The probate court held a two-day trial on the matter in February 2017. Three days before trial, Poafpybitty filed an amended proposal for distribution along with the Estate closing documents in which she relinquished her position regarding the value of the Residence and her intention to retain it as part of her distribution.

The probate court issued an order finding in favor of Irving. It found Poafpybitty intentionally inhibited and delayed the closing of the Estate and unreasonably prolonged the division of the assets. The probate court further found she unreasonably withheld information pertinent to the beneficiaries and requested by them. The probate court found she used her position to manipulate at least one substantial asset to unjustly enrich herself. The probate court additionally found her testimony describing what she believed to be faithful performance was neither sincere nor credible. The probate court found Poafpybitty had not defended or prosecuted the action in the Estate's best interests, that her goal was to use her status to improve her lot in the Estate, and that her decision to bring counterclaims against Irving "was a wasteful exercise of fiduciary power." The probate court denied Poafpybitty's counterclaims.

The probate court additionally ordered Poafpybitty's fees and costs be paid by the Estate through the billing date of May 25, 2016; that Irving's fees and costs be paid by the Estate; and that the residuary assets, including real properties, be distributed

in equal one-quarter shares among the Estate's four devises as tenants in common. The probate court provided "[r]easonable compensation shall be paid by the Estate for legal services in this regard."

Finally, the probate court appointed a special administrator "to perform the remaining duties as [p]ersonal [r]epresentative, to the extent that any such duties remain to be performed sixty (60) days from the issuance of this [o]rder," and that Poafpybitty would be relieved of her fiduciary duties in connection with this appointment.

Poafpybitty appealed, and the circuit court affirmed. This appeal followed.

## ANALYSIS

### Standard of Review

"The standard of review applicable to cases originating in the probate court is controlled by whether the underlying cause of action is at law or in equity." *In re Est. of Moore*, 435 S.C. 706, 709, 869 S.E.2d 868, 869 (Ct. App. 2022) (quoting *In re Est. of Hyman*, 362 S.C. 20, 25, 606 S.E.2d 205, 207 (Ct. App. 2004)). "[A]n action for breach of fiduciary duty is either an action at law or in equity depending on the remedy sought." *Bennett v. Est. of King*, 436 S.C. 614, 621-22, 875 S.E.2d 46, 50 (2022) (quoting *Verenes v. Alvanos*, 387 S.C. 11, 18, 690 S.E.2d 771, 774 (2010)); *see also Ex parte Wheeler v. Est. of Green*, 381 S.C. 548, 554, 673 S.E.2d 836, 839-40 (Ct. App. 2009) ("A case may involve both equitable and legal issues. However, an appellate court must look to the main purpose of the proceeding in order to determine the standard of review to exact." (citation omitted)). "[A] 'breach of fiduciary duty [claim] may sound in equity if the relief sought is equitable.'" *Ex parte Wheeler*, 381 S.C. at 554, 673 S.E.2d at 839 (second alteration in original) (quoting *Bivens v. Watkins*, 313 S.C. 228, 230 n.3, 437 S.E.2d 132, 133 n.3 (Ct. App. 1993)). "An action to remove a personal representative is equitable in nature." *Blackmon v. Weaver*, 366 S.C. 245, 248, 621 S.E.2d 42, 43 (Ct. App. 2005).

"The appellate court's standard of review in equitable matters is our own view of the preponderance of the evidence." *Horry County v. Ray*, 382 S.C. 76, 80, 674 S.E.2d 519, 522 (Ct. App. 2009). "However, an appellate court still affords a degree of deference to the trial court because it was in the best position to judge the witnesses' credibility." *In re Est. of Kay*, 423 S.C. at 480, 816 S.E.2d at 544-45.

## I. Breach of Personal Representative's Duties[2]

## A. Application of Trust Code

We hold the circuit court erred by affirming the probate court's application of the South Carolina Trust Code (the Trust Code)[3] in evaluating Poafpybitty's actions as personal representative.

The South Carolina Probate Code (the Probate Code) provides,

> A personal representative is a fiduciary who shall observe the standards of care described by Section 62-7-804[ of the Trust Code].  [He] . . . has a duty to settle and distribute the estate of the decedent in accordance with the terms of a probated and effective will and this code, and as expeditiously and efficiently as is consistent with the best interests of the estate.  He shall use the authority conferred upon him by this code, the terms of the will, and any order in proceedings to which he is party for the best interests of successors to the estate.

S.C. Code Ann. § 62-3-703(a) (2022).  Section 62-7-804 of the Trust Code provides, "A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust.  In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."

As an initial matter, although the circuit court concluded the probate court erred only by applying section 62-7-804, this section is the only provision of the Trust Code that *does* apply to a personal representative.  *See* § 62-3-703(a); § 62-7-804; *see also* § 62-7-102 (stating the Trust Code does not apply to administration of decedents' estates).  Therefore, we hold the circuit court erred by finding section 62-7-804 was inapplicable, and instead, the probate court properly referenced this provision.

---

[2] We address Issues I, III, and V together under this heading.
[3] S.C. Code Ann. §§ 62-7-101 to -1106 (2022).

Next, we hold the circuit court erred by affirming the probate court's application of section 62-7-813 of the Trust Code. The Probate Code requires the personal representative to provide a copy of a filed inventory and appraisement to "interested persons who have filed a demand for notice of the filing of the inventory pursuant to section 62-3-204." S.C. Code Ann. § 62-3-706(A)(3) (2022); *see also* S.C. Code Ann. § 62-3-708 (2022) (providing a personal representative must submit a supplementary inventory or appraisement if she learns the value in the original is erroneous or misleading). Section 62-7-813 of the Trust Code contains much stricter requirements that do not apply to personal representatives. *See* § 62-7-813(b)(2) (providing a trustee must "throughout the administration of the trust, keep the distributes . . . . reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests"); § 62-7-813(b)(3) (stating that "upon the reasonable written request of a beneficiary, other than a qualified beneficiary, . . . unless unreasonable under the circumstances, [a trustee shall] respond to a beneficiary's written request for information related to the administration of the trust"); § 62-7-813(c)(1) (providing a trustee has a continuing duty to "keep the distributees and permissible distributees, or other qualified beneficiaries who request information in writing, reasonably informed as to the administration of the trust; and . . . send annually . . . a written report of the trust property [that] . . . provides the distributees and permissible distributees, or other qualified beneficiaries who have requested in writing, with information necessary to protect their interests").

Regarding Poafpybitty's communications with the beneficiaries, the probate court held that "no statutory demand notice was required in expecting a personal representative to follow through with her own written accounting commitments" and that no such notice was required under section 62-7-813. The heightened standard under 62-7-813 does not apply to personal representatives in administering estates. *See* § 62-7-102. Thus, the probate court erred by relying on the Trust Code in evaluating Poafpybitty's conduct as personal representative. In particular, the probate court erred in finding Poafpybitty violated a duty to keep beneficiaries informed of her activities with respect to the Estate. Because a personal representative is not specifically charged with this duty, we hold the circuit court erred by affirming the probate court's application of section 62-7-813 of the Trust Code in evaluating Poafpybitty's conduct.

As to the probate court's application of section 62-7-802(a), we hold this does not alone warrant reversal. See § 62-7-802(a) ("A trustee shall administer the trust solely in the interests of the beneficiaries."); § 62-3-703(a) (providing a personal representative "shall use [his] authority . . . for the best interests of successors to

the estate").  Although the Trust Code differs slightly in that the Probate Code does not use the word "solely," both sections 62-7-802(a) and 62-3-703(a) require the fiduciary to act in the interests of the beneficiaries.

## B. Removal

We hold the circuit court erred by affirming the probate court's removal of Poafpybitty as personal representative because (1) Irving never petitioned for or requested her removal and (2) the preponderance of the evidence does not support removal.  We address each point in turn.

Under the Probate Code, the interested parties to an estate have two remedies if a personal representative violates her fiduciary duty.  They may either petition for the removal of the personal representative pursuant to section 62-3-611 of the South Carolina Code (2022) or petition the court to compel the personal representative to perform her duties pursuant to section 62-3-1001(b) of the South Carolina Code (2022).

Section 62-3-611 governs removal of a personal representative and requires the removal to be requested by petition.[4]  *See* § 62-3-611(a) ("A person interested in the estate may petition for removal of a personal representative for cause at any time.  Upon filing of the petition, the court shall fix a time and place for hearing.  Notice shall be given by the petitioner to the personal representative . . . .  [A]fter service of the summons and petition upon the personal representative and receipt of notice of removal proceedings, the personal representative shall not act except to account, to correct maladministration, or preserve the estate.").

> [T]here is a strong deference shown to the personal representative chosen by the testator.  "The Courts have ever been reluctant to take the management of an estate from those to whom it has been confided by the testator, for to that extent the intention expressed in his will would be defeated." *Smith v. Heyward*, 115 S.C. 145, 164, 105 S.E. 275, 282 (1920).  The power to remove a personal representative "should be executed with great caution,

---

[4] We note section 62-3-704(g) of the South Carolina Code (2022) may provide a method for removal for neglecting to comply with the personal representative's duty to file an inventory and appraisement under section 62-3-706, but Irving did not advance this argument to the probate court.

and not at all, unless it is made to appear to be necessary
for the protection of the estate, to prevent loss or injury to
it from misappropriation, maladministration or fraud."
*Id.* at 164-65, 105 S.E. at 282.

*Blackmon*, 366 S.C. at 251, 621 S.E.2d at 45.

Immediately before trial, Irving's counsel expressly stated, "This is not a petition to remove the personal representative." He further explained, "I probably would like to [have the personal representative removed], but I understand the burden of proof is pretty high. We want to give respect to the Testator. Leave her in her place because the expense of removing somebody is way too high."

An important aspect of section 62-3-611 is the requirement of notice to Poafpybitty. Because Irving did not petition for removal under section 62-3-611 and, in fact, expressly stated she was not requesting such relief, we hold the probate court erred by removing Poafpybitty as personal representative.

Further, the caselaw the circuit court relied upon in determining the probate court did not err by removing Poafpybitty as personal representative does not specifically provide that a court may remove a personal representative when such relief has not been requested. *See Church v. McGee*, 391 S.C. 334, 344, 705 S.E.2d 481, 486 (Ct. App. 2011) (finding no credible evidence of malfeasance and affirming the circuit court's rejection of the appellant's request to remove the personal representative); *Blackmon*, 366 S.C. at 251-52, 621 S.E.2d at 45 (holding section 62-3-611(b) governs removal and reversing the trial court's removal of the personal representative when the record did not show she mismanaged the estate or failed to perform a required duty); *id.* at 252, 621 S.E.2d at 45 ("The mere existence of conflict between a personal representative and a beneficiary is an inadequate reason for removal of the personal representative."); *Floyd v. Floyd*, 365 S.C. 56, 69, 615 S.E.2d 465, 472 (Ct. App. 2005), *overturned due to legislative action* (involving a party's petition to remove a trustee); *Maydwell v. Maydwell*, 185 S.W. 712, 713 (Tenn. 1916) (applying Tennessee law governing removal of trustees when a beneficiary requested removal of a trustee and holding a court of equity possessed inherent jurisdiction to remove a trustee independent of statutory provisions for good cause shown); *see also Franklin v. Chavis*, 371 S.C. 527, 534, 640 S.E.2d 873, 877 (2007) (declining to order the personal representative's removal when petitioners had not requested removal in the underlying action); *id.* at 534 n.6, 640 S.E.2d at 877 n.6 (noting "[r]emoval for cause is provided by statute under [section] 62-3-611 . . . , a remedy [the]

petitioners [would be] free to request in the underlying action"); *cf. Hatchell-Freeman v. Freeman*, 340 S.C. 552, 556, 532 S.E.2d 299, 301 (Ct. App. 2000) (affirming the removal of the personal representative even though the decedent's surviving spouse filed no petition for removal when the proceeding was in fact a contest of the parties' petitions for appointment as personal representative under section 62-3-203 of the South Carolina Code (2022), not an action to remove the personal representative, and the surviving spouse had priority for appointment). Because section 62-3-611 requires an interested party seeking removal of a personal representative to do so by filing a petition, we hold the circuit court erred in affirming the probate court's removal of Poafpybitty when Irving neither petitioned for nor specifically requested her removal.

Next, even assuming the probate court had authority to remove a personal representative when such relief was not requested, we find the record does not demonstrate cause for removal under section 62-3-611(b). Section 62-3-611(b) provides cause for removal of a personal representative exists

> when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

First, as to the best interests of the Estate, Irving's counsel's statement that the expense of removing a personal representative was "way too high" acknowledges removal would not be in the best interests of the Estate due to the additional cost. Next, Irving presented no evidence or argument that Poafpybitty misrepresented any facts in obtaining her appointment or that she had become incapable of discharging the duties of the office.

Irving argued Poafpybitty disregarded the probate court's temporary restraining order by continuing to pay the Estate's legal fees out of the Estate's account. We find Poafpybitty reasonably concluded she was not restrained from using the Estate's account to pay customary legal fees to defend the personal representative and the Estate and to comply with aspects of the probate court's order pertaining to administration. The order restrained Poafpybitty from expending any additional

estate funds except those necessary for routine maintenance, HOA assessments, mortgage servicing, and utilities and taxes associated with real property holdings. Poafpybitty's counsel argued he did not interpret the order to prevent his firm from continuing the administration of the Estate or defending Poafpybitty. We conclude Poafpybitty's use of Estate funds to pay legal fees after the probate court issued the temporary restraining order was not sufficient to establish her disregard of the order such that it warranted removal. Moreover, the probate court could have ordered the return of such fees paid to the Estate as an adequate remedy rather than requiring removal.

Next, we find a preponderance of the evidence shows Poafpybitty did not mismanage the Estate. Based on our view of the record, Poafpybitty acted within the discretion provided to her under the will by selling property, repairing property, and paying the ordinary expenses of the Estate, including taxes, insurance, HOA dues, and legal fees customary with administration of the Estate and defending against litigation. *See* S.C. Code Ann. § 62-3-715 (2022) ("[A] personal representative, acting reasonably for the benefit of the interested persons, may properly: . . . (7) make ordinary or extraordinary repairs or alterations in buildings or other structures, demolish any improvements, raze existing, or erect new party walls or buildings; . . . (16) pay taxes, assessments, compensation of the personal representative, and other expenses incident to the administration of the estate; . . . (18) allocate items of income or expense to either estate income or principal, as permitted or provided by law; (19) employ persons, including attorneys, auditors, investment advisors, or agents, even if they are associated with the personal representative, to advise or assist the personal representative in the performance of his administrative duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary; (20) prosecute or defend claims, or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his duties; (21) subject to the restrictions imposed in Section 62-3-711(b), sell, mortgage, or lease any real or personal property of the estate or any interest therein . . . ."); § 62-3-720 ("If any personal representative . . . defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.").

Finally, we find Poafpybitty complied with the statutory duties of her office and therefore did not breach any fiduciary duties owed to the beneficiaries. Section 62-3-703(a) of the Probate Code sets forth the personal representative's general

responsibilities. It provides the personal representative has the duty to "settle and distribute the estate" in accordance with the terms of the will and the Probate Code "as expeditiously and efficiently as is consistent with the best interests of the estate" and must exercise these duties as a prudent person would, using reasonable care, skill, and caution in doing so. *See* § 62-3-703(a); § 62-7-804.

The probate court found Poafpybitty (1) intentionally inhibited and delayed the closing of the Estate and unreasonably prolonged the division of assets; (2) unreasonably withheld information pertinent to the beneficiaries and requested by them; (3) used her position to manipulate at least one substantial asset to unjustly enrich herself at the co-beneficiaries' expense; (4) did not act reasonably for the benefit of all devisees; and (5) did not defend or prosecute this litigation in the Estate's best interest.[5] We address each of these findings in turn.

Based upon our review of the record, a preponderance of the evidence demonstrates Poafpybitty complied with her duty to settle and distribute the Estate in accordance with the will. The will provided Poafpybitty discretion to distribute the properties so long as the distribution was approximately equal. In addition, the will directed Testator's debts be paid as soon as practicable after his death. However, it also stated,

> If at the time of my death any of the real property herein devised is subject to a mortgage, . . . the devisee taking such mortgaged property shall take it subject to such mortgage and that he shall not be entitled to have the obligation secured thereby paid out of my general estate.

Poafpybitty testified she initially believed all of the debts of the Estate needed to be paid before the real properties could be distributed. She stated she intended to sell the properties that the co-beneficiaries did not want and use those proceeds to pay off the debt. She planned to then confer with the co-beneficiaries and divide the remaining properties and assets equally among them according to which properties they wanted. Poafpybitty planned to distribute each parcel to one beneficiary such that each beneficiary's portfolio of properties would be of

---

[5] We note that specific duties of the office are outlined further in subsequent provisions of the Probate Code. *See* S.C. Code Ann. §§ 62-3-704 to -715 (2022). However, the probate court did not find that Poafpybitty violated any of these specified duties; rather, it found she violated the general fiduciary duties set forth in section 62-3-703.

approximately equal value instead of distributing the properties in-kind, which would result in each beneficiary owning a one-quarter interest in each property. We find her proposed distributions were consistent with this approach and were consistent with Testator's intent that the distribution be approximately equal. Although Poafpybitty acknowledged she did not immediately use the proceeds from the sales to pay off an $80,000 line of credit, she stated she did not do this because she wanted to make sure the Estate's account was funded. None of these actions were inconsistent with the provisions of the will. Therefore, the foregoing demonstrates Poafpybitty complied with her duty to settle and distribute the Estate.

Next, we find Poafpybitty attempted to act expeditiously and efficiently in administering the Estate but was hampered by the litigation. Bret Davis, counsel for Poafpybitty and the Estate, testified during trial that it was customary to wait a full year after appointment and notice to creditors before starting the process of settling the Estate. However, the co-beneficiaries hired Scoville in April 2015— about thirteen months after Poafpybitty's appointment. Poafpybitty testified the co-beneficiaries also stopped speaking to her at that time. We find the record shows Poafpybitty attempted to comply with Scoville's requests on behalf of the co-beneficiaries, including the appraisal of the properties, and that up until January 2016, she believed they had reached an agreement as to how to distribute the properties. Further, Davis testified estate litigation and the inclusion of multiple real estate properties in the Estate were both factors that could cause a delay in administration. We find the foregoing demonstrated Poafpybitty complied with the duty to expeditiously and efficiently administer the Estate.

Next, we find Poafpybitty executed her duties for the best interests of the successors to the Estate. We acknowledge we are troubled by Poafpybitty's actions of paying her utilities from the Estate account and her failure to provide complete information regarding the Estate's property and activities as requested by the co-beneficiaries. Further, we are mindful that the probate court was in a superior position to evaluate witness credibility. Nevertheless, we find these actions were not sufficient to support a finding that she breached any fiduciary duty owed to the co-beneficiaries or warrant her removal as personal representative.

Aside from attorney's fees, the main dispute between the parties was the disparity between the two appraised values for the Residence. Irving insists Poafpybitty's position regarding the value was unjustified in light of the second appraiser Russell Burgess's subsequent appraisal of the Residence. Although the first appraiser, James Cromartie, appraised all of the properties in the Estate, Burgess only appraised the Residence. Cromartie's appraisal reduced the value of several other

properties in the Estate, including the property Irving wished to receive earlier in the administration of the Estate; therefore, this reduced value was relative to the values of the other properties. Yet Irving challenged only the value of the Residence.

Because of this reduction in value of many of the other properties in the Estate, and especially considering the prior mold and mildew issue, we find it was not unreasonable or self-dealing for Poafpybitty to take the position that Cromartie's appraisal—with the inclusion of the cost of the repairs—was the correct value of the Residence for distribution purposes. Rather, the evidence shows Poafpybitty held a good faith belief that this was the correct value, even considering the proposed distribution was to herself.

Cromartie's and Burgess's testimonies also support this conclusion. Cromartie testified he would not purchase the property at his appraised value of $95,000 even knowing the mold and water damage had been repaired. When Burgess was asked if he would purchase the Residence at the $193,000 value he reached, he said he "would probably want to buy it a little cheaper." Further, Poafpybitty was to take the Residence subject to the existing mortgage of about $130,000. Based on the foregoing, we find Poafpybitty complied with her fiduciary duties with respect to the valuation of the Residence.

Regardless, in an effort to resolve matters with Irving prior to trial, Poafpybitty relinquished her claim of the Residence and agreed to assign the appraised value of $193,000 to the Residence. During trial, she stated she agreed to the $193,000 value reached by Burgess even though she did not personally believe the Residence was worth that much. Rather than demonstrating bad faith or a failure of her fiduciary duty, Poafpybitty's agreement to this value was an attempt to resolve the dispute and close the Estate. This would have eliminated the need for trial. Accordingly, we hold the circuit court erred by affirming the probate court's finding that Poafpybitty breached her fiduciary duties by advancing the position that the $95,000 value—plus the repairs—was the correct value for the Residence.

For these reasons and based upon our view of the preponderance of the evidence, we find the record does not establish cause for removal. In addition, we conclude the circuit court erred by affirming the probate court's removal of Poafpybitty as personal representative when Irving did not request such relief.

Further, because we hold the probate court erred by removing Poafpybitty as personal representative, we hold the probate court had no basis under section

62-3-614 to appoint a special administrator. *See* S.C. Code Ann. § 62-3-614 (2022) ("A special administrator may be appointed: (1) informally by the court on the application of an interested person when necessary: (a) to protect the estate of a decedent prior to the appointment of a general personal representative or if a prior appointment has been terminated [due to the personal representative's death or disability]; (b) for a creditor of the decedent's estate to institute any proceeding under Section 62-3-803 [of the South Carolina Code (2022)]; or (c) to take appropriate actions involving estate assets . . . .").

Based on the foregoing, we reverse the circuit court's ruling affirming the probate court's removal of Poafpybitty as personal representative and appointment of a special administrator.

## C. Will Reformation

Poafpybitty argues the will gave her sole discretion to designate property for estate distribution and that her proposed distribution would have distributed each property to a single beneficiary such that each beneficiary would receive a distribution of approximately equal value, consistent with Testator's intent. She contends that by ordering distribution of the estate to each beneficiary in equal, one-quarter shares, the probate court impermissibly reformed the will.[6]

Because we reverse the probate court's findings of breach of fiduciary duty and removal of Poafpybitty, we decline to address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).

## II. Award of Attorney's Fees to Irving[7]

We hold the circuit court erred by affirming the probate court's award of attorney's fees to Irving. The circuit court held *In re Estate of Kay* did not apply but concluded the probate court acted within its discretion to award attorney's fees based on sections 62-1-111 and 62-3-712 of the South Carolina Code (2022). We

---

[6] We hold any argument that this court should reverse the probate court's ruling as to the distribution is abandoned. *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal.").

[7] We address Issues II and IV together under this heading.

hold the record does not support the probate court's award to Irving under either of these provisions.

Section 62-1-111, which was enacted in 2013,[8] provides, "In a formal proceeding, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the estate that is the subject of the controversy." *See also* S.C. Code Ann. § 62-1-201(17) (2022) ("'Formal proceedings' means actions commenced by the filing of a summons and petition with the probate court and service of the summons and petition upon the interested persons."). Because we find the record shows Poafpybitty did not take any action in contravention of the will, breach any fiduciary duty, or otherwise fail to perform her official duties, we find Irving was not justified in bringing the underlying action. Further, because Poafpybitty attempted to resolve the parties' dispute by relinquishing her claim to the Residence prior to trial, we question whether the trial was necessary. Therefore, we find equity does not support an award of attorney's fees to Irving under section 62-1-111.

Section 62-3-712 provides, "If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty . . . ." Because we find Poafpybitty did not breach her fiduciary duties, we hold Irving was not entitled to an award under section 62-3-712.

Further, although the circuit court did not apply *In re Estate of Kay*, we agree the application of the common fund doctrine, as discussed in *In re Estate of Kay*, does not support an award of attorney's fees to Irving. The common fund doctrine requires that all beneficiaries be united. *See* 423 S.C. at 489, 816 S.E.2d at 549 ("Under the common fund doctrine, a court in its equitable jurisdiction may award reasonable attorney's fees to the party 'who, at [the party's] own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property.'" (alteration in original) (quoting *Layman v. State*, 376 S.C. 434, 452, 658 S.E.2d 320, 329 (2008))). "[I]f the parties' interests are adverse, the doctrine does not apply." *Id.* at 490, 816 S.E.2d at 550. Here, Poafpybitty was an adverse party. Thus, we hold the probate court erred in relying on the common fund doctrine in awarding attorney's fees to Irving to be paid for by the Estate.

---

[8] Although *In re Estate of Kay* was decided in 2018, estate administration in that case began in 2007. *See* 423 S.C. at 481-83, 816 S.E.2d at 545-47.

For these reasons, we reverse the circuit court's order affirming the probate court's award of attorney's fees to Irving.

## III.  Attorney's Fees of the Personal Representative

We hold the circuit court erred by affirming the probate court's finding Poafpybitty was required to bear her own legal expenses.  Section § 62-3-720 provides, "If any personal representative . . . defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."  Based on our view of the preponderance of the evidence, we find the record demonstrates Poafpybitty was entitled to have her reasonable legal expenses paid for by the Estate pursuant to section 62-3-720 because she defended Irving's claims and brought counterclaims against Irving in good faith.

As we stated, we find Poafpybitty's adherence to the value for the Residence as stated in the Cromartie appraisal was reasonable.  Her willingness to take the distribution subject to the mortgage and relinquishment of her request for this asset in the final distribution submitted prior to trial further demonstrate she acted in good faith on this issue.  Even though Poafpybitty defended her position of living in the Residence without paying rent to the Estate, we find this was a good faith argument.  As Testator's spouse, Poafpybitty had been living in the Residence for about twenty years.  Additionally, it is undisputed Steven lived in the Residence rent-free for approximately eight months after Testator's death, and Matthew had lived in another Estate property, rent-free, since Testator's death and had continued to do so at least until the time of trial.  In addition, Poafpybitty testified the Estate paid Matthew's electricity and water.  Therefore, we find Poafpybitty had a good faith argument that one beneficiary be treated equally to two other beneficiaries in this regard and further that a widow not be required to pay rent to the Estate.

Moreover, Poafpybitty's position that the properties should be distributed to each beneficiary such that the beneficiary would obtain an entire interest rather than distributing the properties in-kind was reasonable and consistent with the terms of the will.  This was therefore a position held in good faith.  Poafpybitty reasonably observed that an in-kind distribution of the property to four beneficiaries would invite potentially expensive and protracted future litigation.

As to Poafpybitty's counterclaim for abuse of process, we find the record shows she prosecuted this in good faith.  Poafpybitty and her counsel felt Irving's

litigation hampered Poafpybitty's efforts to close the Estate and that her claims were premised on her position that the only proper way to distribute the Estate was in-kind, even though the will gave Poafpybitty discretion as to how to distribute the property. For the foregoing reasons, we find the preponderance of the evidence shows Poafpybitty defended and prosecuted the litigation in good faith.

Furthermore, we hold the circuit court erred by affirming the probate court's ruling that Poafpybitty was responsible for all of the attorney's fees she incurred after May 25, 2016, which would include fees incurred in administering the Estate. *See* § 62-3-715(19) (providing "a personal representative, acting reasonably for the benefit of the interested persons, may properly: . . . employ persons, including attorneys, . . . even if they are associated with the personal representative, to advise or assist the personal representative in the performance of his administrative duties; act without independent investigation upon their recommendations; and instead of acting personally, employ one or more agents to perform any act of administration, whether or not discretionary"); *see also* S.C. Code Ann. § 62-1-201(13) (2022) ("'Expense of administration' includes commissions of personal representatives, fees and disbursements of attorneys, fees of appraisers, and such other expenses that are reasonably incurred in the administration of the estate."). First, this date was arbitrary. Second, this ruling does not distinguish between the fees properly incurred in administering the Estate versus fees incurred in defending the litigation. Even if Poafpybitty were not entitled to her fees under section 62-3-720, she is entitled to have the attorney's fees she incurred in performing acts of administration after May 25, 2016, paid for by the Estate. On May 27, 2016, the probate court issued its order granting Irving's motion for a temporary restraining order. Therefore, any acts of administration undertaken by counsel at that point were at the direction of the probate court and no evidence demonstrates such actions were not "reasonably for the benefit" of the beneficiaries. Based on the foregoing, we reverse the circuit court's ruling as to this issue.

Nevertheless, we note both parties incurred substantial—and potentially excessive—attorney's fees in this litigation; both parties incurred over $100,000 in fees prior to this appeal. The probate court made no finding as to the reasonableness of attorney's fees. Accordingly, we remand for a hearing for the probate court to determine Poafpybitty's reasonable attorney's fees.

Finally, as to Poafpybitty's request that this court find she is entitled to her reasonable commission, she did not include this in her statement of the issues on appeal or argue this point in the body of her brief. Thus, we conclude this issue was abandoned on appeal. *See Glasscock, Inc.*, 348 S.C. at 81, 557 S.E.2d at 691

("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

**CONCLUSION**

For the foregoing reasons, the circuit court's decision affirming the probate court's order is

**REVERSED AND REMANDED.**

**GEATHERS, HEWITT, and VINSON, JJ., concur.**